Luther WELLS et al., Appellants,

v.

BOARD OF EDUCATION OF MERCER COUNTY, Appellee.

Court of Appeals of Kentucky.

Feb. 10, 1956.

Rehearing Denied May 11, 1956.

John L. Ward, Harrodsburg, for appellants.

W. A. Wickliffe, Draffen & Wickliffe, Harrodsburg, for appellee.

STANLEY, Commissioner.

The Board of Education of Mercer County has ordered the Fairview elementary school closed and assigned the pupils to schools at Cornishville, Salvisa and McAfee. The patrons of the Fairview school and taxpayers of the community instituted this suit to enjoin that action. The complaint describes the conditions and injurious consequences, as the plaintiffs claim. They rest their case upon the grounds of unreasonable and arbitrary action on the part of the Board. Upon a large record the circuit judge expressed his views, both of the facts and of the law, and his conclusion that the action of the Board was within its discretionary powers. Accordingly, the judgment dismissed the complaint. The plaintiffs appeal.

The Fairview school is between the villages of Duganville and Terrapin in the northeastern section of Mercer County. Its enrollment was 79 pupils. The direct distance to each of the three schools to which the Fairview children have been assigned is approximately ten miles. Fifty pupils will attend Cornishville, eleven the Salvisa, and five the McAfee school. It is not shown where the other thirteen children will go.

We summarize the evidence presented by the plaintiffs. Fairview school is centrally located for the children attending it. The Board spent $16,000 in 1950 or 1951 in reconstructing and equipping the building, and its facilities are satisfactory and adequate: It would seem from the evidence as a whole that in respect of the facilities, those at Cornishville are better, but those at Salvisa and McAfee are substantially the same. The bus transporting children to Cornishville must pass over a dilapidated and dangerous bridge having a weight capacity less than the average load, and the children would have to be transferred from one bus to another en route. To reach the point of transfer the bus will have to go part of the way over an abandoned road. The buses to Salvisa and McAfee pass over two dangerous railroad crossings. The children must ride much greater distances to and from the other schools than at present. The average child now leaves home between 7:00 and 7:30 in the morning and returns between 3:00 and 3:30 in the afternoon, but under the new arrangement he will leave home by 6:00 in the morning and get back between 5:00 and 6:00 in the afternoon. A physician testified that all this was bad for the physical and psychiatric development of the children. Evidence concerning added expense of transportation includes the purchase of new buses and increases in operation costs. This evidence seems to be but expressions of opinion while more certain and definite evidence of the Board seems to show that economy will be effected. However, the abandoned school will not sell for more than $2,000. The plaintiffs also proved that the State Superintendent of Public Instruction, upon a survey of the schools of Mercer County, had recommended that both the Cornishville and Fairview schools be abandoned and a new one erected to serve both communities. But it clearly appears that this was only advisory and not of a mandatory character.

Added to the arguments based on these recited facts showing inconveniences, burdens and dangers of transportation, are the arguments of a bad psychological effect in taking the children out of their own community, the impairment of the neighborhood spirit and the decrease in value of all property in the locality now being served by the Fairview school.

The evidence of the School Board in support of its action is to the effect that Fairview school is inadequate and in poor physical condition. It has no central heating system or inside toilets and water, and the cafeteria is not up to the required standards. It has no gymnasium. It would require the expenditure of $25,000 to $30,000 to put the property in modern and adequate condition. The three other schools are more modern except the McAfee school which has an inadequate water supply and outside toilets, the same as Fairview. It appears that the route to and from Cornishville has been definitely established, and the school bus will not have to pass over the dangerous bridge. The Board conceded that in making a transfer from one bus to another a bus will have to use an abandoned road for a short distance, but the Board intends to maintain the road in a passable condition. However, it is by no means certain that this is a permanent arrangement. The two railroad crossings have been used by other buses for years and are not different from others along school routes of the county. The bus to Cornishville will not have to travel over eight or ten miles each way. Discontinuance of the school will effect considerable saving of money. It is also shown that the attendance at Fairview has decreased in the past few years from 125 to 79 pupils. It is not clear whether the consolidation of the high schools accounts in part for this decline. There is no evidence concerning the effect of eventual desegregation of the races.

The parties cite cases in support of their respective contentions. But each case of this class, as indeed nearly every case, must be decided on its own particular facts.

The Legislature has granted to every board of education general control and management of the schools within its district that is consistent with the rules and regulations of the State Board of Educa-

tion. KRS 160.290. A county board of education is given authority "when necessary" to "unite subdistricts or parts of subdistricts, discontinue subdistricts, or transfer a child to other subdistricts." KRS 160.070. We have always recognized that the wisdom or expediency of the action taken by a board of education is a matter of quasi-legislative or administrative discretion. Bell County Board of Education v. Wilson, 263 Ky. 556, 92 S.W.2d 821; Smith v. Withers, 270 Ky. 568, 110 S.W.2d 271. The function of the courts is to decide a test of regularity and legality of a board's action by the statutory law and by the constitutional protection against the exercise of arbitrary official power. Section 2, Kentucky Constitution.

In the present case the statutory validity or sufficiency of the action taken by the county board was questioned, but by curative proceedings such questions passed out of the case. See Audas v. Logan County Board of Education, 246 Ky. 534, 55 S.W. 2d 341.

 Although the delegation of power to a board of education respecting discontinuance of a district school is qualified merely by the term "when necessary," that term has been judicially defined to mean "reasonably useful, convenient or proper" from the standpoint of betterment of the county school system. Whalen v. County Board of Education of Harrison County, 239 Ky. 341, 39 S.W.2d 475; Audas v. Logan County Board of Education, 246 Ky. 534, 55 S.W.2d 341. That is the general discretionary authority, but the statutes imperatively require the several boards to provide adequate and convenient schools. County Board of Education of Bath County v. Goodpaster, 260 Ky. 198, 84 S.W.2d 55. Upon the broad authority to abolish schools by consolidation or to take other official action, certain limitations are imposed as a

matter of law. The board must act in good faith, upon a sound, just and reasonable basis, and have due regard for the public interests and consequences of its action upon the children affected. No board or officer vested with governmental authority may exercise it arbitrarily. If the action taken rests upon reasons so unsubstantial or the consequences are so unjust as to work a hardship, judicial power may be interposed to protect the rights of persons adversely affected. In most of the cases of this kind coming before this court the action of the several boards of education has been upheld as having been within their discretion. But we have some cases holding action of the boards with respect to similar problems constituted an abuse of discretion requiring the courts to set it aside. See Knox County Board of Education v. Fultz, 241 Ky. 265, 43 S.W.2d 707; Bell County Board of Education v. Wilson, 263 Ky. 556, 92 S.W.2d 821; Alford v. Board of Education of Campbell County, 298 Ky. 803, 184 S.W.2d 207; Schmidt v. Payne, 304 Ky. 58, 199 S.W.2d 990; Phelps v. Witt, 304 Ky. 473, 201 S.W. 2d 4.

 Doubtless, the members of the Mercer County Board of Education realized that the people of the Fairview community are devoted to their school and that its closing would cause great unhappiness and inconvenience. Its continuance could well be justified. But it was the responsibility of the Board to weigh all the advantages and disadvantages and all the factors involved from the overall point of view of the efficiency of the county school system and the interests of the public as a whole and then take such action as the Board deemed best. We concur in the view of the circuit court that the action of the Board was not an abuse of administrative discretion.

Accordingly, the judgment is affirmed.